**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| CEDRIC RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No.20-450-BAJ-EWD |
| JAMES LEBLANC, in his official capacity; ) | |
| and THE STATE OF LOUISIANA, ) | |
| DEPARTMENT OF PUBLIC SAFETY & ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff, Cedric Richardson, moves for partial summary judgment on his claims for injunctive relief under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA").

Mr. Richardson was subject to an explicit, written Louisiana State Penitentiary ("LSP") policy that excludes any inmate who is given a duty status from using the prison's hobby shop. Generally, "no hobby shop" is used as a punishment for Louisiana prisoners; but under LSP policy, it is automatically applied to any inmate with a disability that requires a duty status.

Defendants thus violated 28 CFR § 35.130(b)(8), which prohibits any "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

Mr. Richardson is seeking summary judgment on 1) his claim for injunctive relief and 2) to narrow the issues that will proceed to the fact finder regarding his damages claim.

1

## II.   **BACKGROUND**

Louisiana law requires that the Department of Corrections "shall provide employment opportunities and vocational training for all inmates, regardless of gender, consistent with available resources, physical custody, and appropriate classification criteria." LA R.S. 15:832(A).

Some inmates have physical limitations. Accordingly, LSP staff issue "duty statuses" to inmates to record and implement those limitations. As the Fifth Circuit explained, a "'duty status' is a written designation assigned by a prison medical doctor indicating an inmate's physical or mental ability to perform hard labor in accordance with his sentence. . . . Duty statuses may range from no duty (indicating a need for bed rest), to light duty or regular duty with restrictions, and finally to regular duty without restrictions (indicating the inmate is capable of performing any and all hard labor)."[1]

Generally, duty statuses are supposed to be specific to an inmate's "health condition."[2] There are, however, exceptions. Per LSP Directive 9.036, any inmate "under medical care and/or treatment, requiring a duty status" is not allowed to use the LSP hobby shop.[3] The hobby shop is a program by which inmates can buy tools and raw materials and then paint or create woodwork, metalwork, leatherwork, and other forms of art for sale at the Angola Rodeo.[4] And it is the common practice of LSP doctors to add a "no sports, no hobby craft, no rodeo" clause to every medical duty status.[5]

---

[1] *Armant v. Stalder*, 287 Fed. Appx. 351, 352 n. 1 (5th Cir. 2008)
[2] Exhibit "A," Health Care Policy No. HCP18, at 1.
[3] Exhibit "B," LSP Directive 09.036, at 2.
[4] *See, e.g.,* Exhibit B (The "hobbyshop" is the place where "hobby craft" takes place; the two terms are used interchangeably).
[5] *See*, e.g., *Hacker v. Cain*, 14-cv-63 (M.D. La. June 6, 2016) (inmate with cataracts had "no sports, no hobbycraft, no rodeo" added to duty status); *Reeves v. LeBlanc*, 13-cv-586 (M.D. La., Oct. 23, 2014) (inmate with flat feet had "no sports, no hobby craft, [and] no rodeo" added to duty status);

Mr. Richardson is an inmate at LSP.[6] Mr. Richardson suffers from chronic neck, back, and shoulder pain, as well as carpel tunnel syndrome.[7] These conditions have been documented in Mr. Richardson's medical file since 2015.[8] As a result of his medical conditions, Mr. Richardson is substantially limited in his ability to lift and bend.[9] Accordingly, Mr. Richardson is a qualified individual with a disability under the ADA. In the alternative, Defendants regarded Mr. Richardson as having an impairment that substantially limited one or more major life activities. As a result of his limitations, Mr. Richardson was issued a permanent duty status on May 6, 2013: "regular duty with restrictions; Squad A, no kitchen, no hobby craft, no sports and no rodeo."[10] Prior to November 20, 2019, Mr. Richardson was participating in hobby craft as a helper.[11] However, on November 20, 2019, staff at LSP reviewed Mr. Richardson's duty status, determined that he could no longer participate in hobby craft, and excluded him from the hobby shop area.[12]

That same day, Mr. Richardson filed a request for accommodation, specifically requesting that he be permitted back in the hobby shop.[13] Mr. Richardson referenced the ADA in his request, explaining that "[t]he ADA prohibits entities, including the DOC, from denying a qualified individual with a disability the benefits of the service, programs, or activities of the public entity because of the individuals disability."[14] Mr. Tracy Falgout, the ADA Coordinator at LSP, was

---

*Adams v. Cain,* 13-cv-530 (M.D. La., Jan. 26, 2016) (inmate with neck and back pain had "no sports, no hobby craft, [and] no rodeo" added to duty status).

[6] Richardson Decl. ¶ 3.
[7] Lavespere dep. 20:24-21:16, 22:6-20.
[8] Lavespere dep. 20:24-21:16, 22:6-20.
[9] Richardson Decl. ¶ 4.
[10] Lavespere dep. 26:21-27-6; *see also* Exhibit "C," Duty Status Review.
[11] Richardson Decl. ¶ 5.
[12] Richardson Decl. ¶ 7; *see also* Exhibit "D," Request for Accommodation.
[13] Exhibit "D."
[14] Exhibit "D."

responsible for responding to Mr. Richardson's request for accommodation.[15] Mr. Falgout reviewed Mr. Richardson's duty status, determined that his duty status indicated he could not participate in hobby craft, and denied Mr. Richardson's request.[16] Mr. Falgout did not review Mr. Richardson's medical records, nor did he confer with the medical department regarding Mr. Richardson's ability to safely participate in hobby craft.[17] No one from the medical department examined Mr. Richardson to determine whether he could safely participate in hobby craft.[18] Instead, Mr. Falgout simply explained that "[r]estriction secondary to medical determination is upheld."[19] After being notified that his request for accommodation had been denied, Mr. Richardson appealed the denial of his request for accommodation.[20] On June 10, 2020, Mr. Richardson received the response to his appeal ("second step ARP"), which agreed with Mr. Falgout's denial of Mr. Richardson's request for accommodation.[21]

On July 13, 2020, Mr. Richardson filed his complaint, alleging violations of Title II of the ADA and Section 504 of the RA.[22] On July 15, 2020, Defendant James LeBlanc and the Louisiana Department of Public Health and Safety were served with the complaint and summons.[23] On or around July 16, 2020, Mr. Falgout approached Dr. Randy Lavespere, then Medical Director at LSP, regarding a review of Mr. Richardson's duty status.[24] Dr. Lavespere reviewed Mr. Richardson's duty status and determined that he could safely participate in light hobby craft

---

[15] Falgout dep. 12:1-20.
[16] Falgout dep. 13:2:11.
[17] Falgout dep. 13:19-14:2.
[18] Richardson Decl. ¶ 11.
[19] Exhibit "E," Request for Accommodation Denied.
[20] Richardson Decl. ¶ 12.
[21] Exhibit "F," Second Step Response.
[22] R. Doc. 1.
[23] R. Docs. 4, 5.
[24] Lavespere dep.11:6-23.

activities.[25] On July 17, 2020, Dr. Lavespere issued a new duty status for Mr. Richardson which permitted him to participate in light hobby craft activities.[26] This duty status is set to expire after one year.[27] If Dr. Lavespere had been asked to review Mr. Richardson's duty status in November 2019, he would have changed Mr. Richardson's duty status at that time so that he could participate in light hobby craft activities.[28]

As is set forth below, Defendants' exclusionary policy violates the ADA. Additionally, Defendants violated the ADA because they excluded Mr. Richardson from hobby craft solely on the basis of his disability without any inquiry into whether he could safely participate in hobby craft activities. Although Mr. Richardson's duty status was changed to permit his participation in light hobby craft activities after Defendants were served with the Complaint, Mr. Richardson's light hobby craft duty status is only temporary. Without injunctive relief, there is nothing preventing Defendants from arbitrarily revoking Mr. Richardson's temporary duty status and excluding him from hobby craft activities. Also, when Mr. Richardson was excluded from hobby craft, he was unable to sell any of his hobby craft items and lost that opportunity for income. Regardless of Mr. Richardson's current duty status, he still has standing to pursue compensatory damages for his lost income. Accordingly, summary judgment should be granted in his favor.

## III.    PLAINTIFF'S COMPLAINT AND THE ISSUES RAISED IN THIS MOTION.[29]

On July 13, 2020, Mr. Richardson filed suit against the Louisiana Department of Public Safety & Corrections and James LeBlanc, in his official capacity as Secretary, for disability-related

---

[25] Lavespere dep. 9:20-10:5.
[26] Exhibit "C."
[27] Exhibit "C."
[28] Lavespere dep. 27:17-28:11.
[29] The "Facts" are set forth in Plaintiff's Concise Statement of Undisputed Facts which is attached to this memorandum, as is required by Local Rule 56(b).

discrimination under Title II of the ADA and Section 504 of the RA.[30] In his complaint, Mr. Richardson seeks damages, injunctive and declaratory relief, and attorneys' fees/costs for violation of Title II of the ADA and Section 504 of the RA.

This motion for summary judgment is limited to Mr. Richardson's status as an individual with a disability, whether Defendants' policy that excludes all inmates with a duty status from hobby craft violates the ADA, and whether Defendants' exclusion of Mr. Richardson from hobby craft without completing any assessment of his ability to safely participate violates § 35.130(b)(8). At the trial on the merits, Mr. Richardson will also argue that Defendants committed intentional discrimination. Summary judgment is not appropriate on the intentional discrimination issue due to factual disputes.

## IV.    LAW / ANALYSIS

The implementing regulations of the ADA prohibit any "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." 28 C.F.R. § 35.130(b)(8). Mr. Richardson was prohibited from participating in hobby craft because of his disability, despite the fact that a later duty status review revealed that he could have safely participated in light hobby craft activities. Mr. Richardson made a request through LSP's Administrative Remedy Process ("ARP") that he be permitted to participate in hobby craft, but Defendants formulaically denied his request without assessing whether he could safely participate in hobby craft. Only after this lawsuit was filed did Defendants review Mr. Richardson's medical records and permit him to participate in hobby craft. Mr. Richardson was excluded from hobby

---

[30] R. Doc. 1.

craft solely based on his disability in violation of the ADA and RA. Mr. Richardson has standing to bring Defendants into compliance with the ADA and RA and partial summary judgment should be granted in his favor.

### A.    Mr. Richardson Has Standing to Obtain Injunctive Relief.

"Standing to seek injunctive relief requires plaintiffs to show that they suffer or will suffer an injury-in-fact, and therefore would benefit from the court's granting of such equitable relief." *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015). Plaintiffs must show that "they face a palpable present or future harm, not harm that is 'conjectural or hypothetical.' " *Id.* (quoting *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 n.23 (5th Cir. 1998) ). "Past wrongs" do not by themselves "amount to that real and immediate threat of injury necessary to make out a case or controversy." *Armstrong*, 141 F.3d at 563 (internal quotation marks omitted). However, "[p]ast wrongs can be considered … as evidence of an actual threat or repeated injury." *Perez*, 624 F. App'x at 183.

Mr. Richardson suffered an injury-in-fact when he was improperly excluded from hobby craft. When Mr. Richardson was excluded from hobby craft, he was unable to make any hobby craft sales.[31] Mr. Richardson's name was also removed from the waitlist for a hobby craft box.[32] While Mr. Richardson's duty status was changed after Defendants received notice of this lawsuit, his current duty status is only temporary and expired on July 17, 2021.[33] Mr. Richardson reasonably anticipates that if his temporary duty status is not renewed or converted into a permanent duty status, he will again be arbitrarily excluded from hobby craft.[34] Absent injunctive relief, Defendants can exclude Mr. Richardson from hobby craft despite his documented ability to

---

[31] Richardson Decl. ¶ 8.
[32] Richardson Decl. ¶ 8.
[33] Richardson Decl. ¶ 16; *See also* Exhibit "C."
[34] Richardson Decl. ¶ 19.

safely participate in hobby craft activities. Accordingly, Mr. Richardson has standing to obtain injunctive relief.

And, of course, a plaintiff always has standing to recover monetary damages for intentional discrimination when they are denied the benefits of services, programs, or activities for which the public entity is responsible, or were otherwise discriminated against. *See Smith v. Bd. of Comm'rs of the La. Stadium*, 385 F.Supp.3d 491 (E.D. La. 2019) (citing *Wells v. Thaler*, 460 F. App'x 303 (5th Cir. 2012)). Here, Mr. Richardson has standing to seek monetary damages for Defendants' discriminatory actions when they excluded him from hobby craft without completing an assessment of his ability to safely participate in hobby craft. When Mr. Richardson was excluded from hobby craft, he was unable to assemble hobby craft items or make hobby craft sales. This resulted in a loss of income for Mr. Richardson. He has standing to seek compensatory damages for this loss of income.

### B.    The ADA/Rehabilitation Act Standard, Generally.

The ADA/§504 "are judged under the same legal standards, and the same remedies are available under both Acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam). "To show a violation of either statute, a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (*quoting Hale v. King*, 642 F.3d 492, 499 (5th Cir.2011) (per curiam)). Thus, "[a]lthough[, for the purposes of this motion, Plaintiffs] focus primarily on Title II, [the] analysis is informed by the Rehabilitation Act, and [. . .] applies to both statutes." *Frame v. City of Arlington*, 657 F.3d 215, 224 (5th Cir. 2011) (en banc).

A public entity bears the burden of adequately accommodating the needs of an individual with a disability. In *Pierce v. D.C.*, by the District of Columbia Circuit explained that "the express prohibitions against disability-based discrimination in Section 504 and Title II include *an affirmative obligation* to make benefits, services, and programs accessible to disabled people" and that covered "entities may very well need to act affirmatively to modify, supplement, or tailor their programs and services to make them accessible to persons with disabilities." 128 F. Supp. 3d 250, 266–67 (D.D.C. 2015), *reconsideration denied*, 146 F. Supp. 3d 197 (D.D.C. 2015) (italics original).

The ADA regulations effectuate the ADA's mandate that public entities make reasonable modifications to their programs and services to accommodate disabled persons. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004). Thus, whether an individual has experienced discrimination can be determined by whether the public entity has violated the applicable regulations for Title II of the ADA. *See Frame*, 657 F.3d at 231 (finding that the Title II ADA regulations for sidewalks are enforceable because they are congruous with Title II's reasonable modification requirement); *Arce v. Louisiana*, No. CV 16-14003, 2017 WL 5619376, at *13 (E.D. La. Nov. 21, 2017) (J. Africk) (concluding that Attorney General's interpretation of Title II as embodied in 28 C.F.R. § 35:130(g) was reasonable and, therefore, privately enforceable). The applicable regulations at issue in this case are as follows:

- 28 CFR § 35.130(b)(7)(i): "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

- 28 CFR § 35.130(b)(8): "A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."

- 28 CFR § 35.130(h): "A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities."

Clearly, rigid policies directly contravene the mandates of the ADA/RA. Eligibility criteria that screen out or even *tend to* screen out individuals with a disability are impermissible. And while a public entity can impose legitimate safety requirements, those requirements must be based on actual risks, not on speculation, stereotypes, or generalizations.

Inmates at LSP can participate in hobby craft on a first come/first serve basis.[35] Pursuant to LSP Directive 9.036, "No offender receiving medical care and/or treatment requiring a restriction in the inmate's regular duties will be allowed to utilize the hobbyshops, until such time the inmate is returned to regular duty without restrictions."[36] However, LSP Directive 13.063 qualifies this exclusion: "Offenders assigned restrictive duty will not be allowed to participate in sports and/or recreational activities, unless specified by the treating health care provider. Participation in these activities could worsen or cause a recurrence of an injury or other medical condition. If medically indicated, the treating provider may also restrict sports activities of an offender on regular duty."[37]

In *Guy v. LeBlanc*, the plaintiff was a hard of hearing inmate at LSP who was excluded from hobby craft based on his duty status. 400 F. Supp. 3d 536, 540 (M.D. La. 2019). The plaintiff submitted an ARP requesting access to the hobby craft program, which was denied even though LSP medical director determined that the plaintiff could safely perform some hobby craft activities. *Id.* This Court found that "a reasonable jury could find that the Department violated the

---

[35] See Exhibit "B," LSP Directive 9.036.
[36] Exhibit "B" at 2.
[37] Exhibit "G," LSP Directive 13.063, at 3.

ADA and RA by prohibiting Guy from performing hobbycraft activities that Angola's medical director admits Guy can safely perform." *Id.* at 545.

In *Lewis v. Cain*, Honorable Judge Dick reviewed LSP's hobby craft policy and its blanket exclusion of inmates with a medical duty status. No. 15-CV-318 (M.D. La. Mar. 31, 2021). Two inmates challenged LSP's hobby craft policy as exclusionary under the ADA. *Id.* at 75-76. However, one inmate did not challenge his exclusion through the ARP process and the other inmate's ARP was denied based on a review of his medical records and the medical department's "thoughtful consideration" of the inmate's medical conditions and ability to safely participate in hobby craft. *Id.* Judge Dick explained:

> While the evidence presented demonstrates that medical staff are making individualized assessments to determine eligibility to apply for hobby craft, it also demonstrates that a blanket exclusion exists, and an inmate must challenge their classification via ARP to obtain relief. However, the Court finds that the hobby craft privilege is not the same kind of program/activity/service as the others complained of because all inmates, disabled or not, must apply for hobby craft and are screened prior to allowing participation. Further, evidence demonstrates that when a disabled inmate requests to be permitted to participate in hobby craft, LSP providers give thoughtful consideration to the inmate's medical conditions and/or impairments in determining the safety of participation in hobby craft.

*Id.* at 77-78 (internal citations omitted). In sum, Judge Dick found that while the hobby craft policy "constitute[s] a blanket denial of access for disabled inmates," the implementation of the policy did not violate the ADA because the Department evaluated the plaintiff's medical conditions when considering his ARP. *Id.* at 117-118.

Thus, to avoid liability under the ADA, Defendants must show that they considered Mr. Richardson's medical conditions and determined that he could not safely participate in hobby craft because of his medical conditions prior to denying his request for accommodation. The undisputed facts show that Mr. Falgout formulaically denied Mr. Richardson's request to participate in hobby craft based solely on his duty status in violation of the ADA/RA.

11

Mr. Richardson's appeal of this denial was also formulaically rejected based solely on his duty status.

### C.    Mr. Richardson is a Qualified Individual with a Disability.

Under Title II of the ADA and Section 504 of the Rehabilitation Act, an individual has a disability if he or she "[has] a physical or mental impairment that substantially limits one or more major life activities of such individual; or a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2012). The ADA does not explain what "substantially limits" these activities, but regulations stress that this phrase must be broadly construed, because the relevant consideration is "whether public entities have complied with their obligations . . . not the extent to which an individual's impairment substantially limits a major life activity." 28 C.F.R. § 35.108(d)(1). An impairment qualifies under the Act "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," but it "does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 28 CFR § 35.108(d)(v).

Here, Mr. Richardson suffers from chronic neck, back, and shoulder pain, as well as carpel tunnel syndrome.[38] These conditions have been documented in Mr. Richardson's medical file since 2015.[39] As a result of his medical conditions, Mr. Richardson is substantially limited in his ability to lift and bend.[40] Medical staff at LSP had knowledge of Mr. Richardson's limitations and assigned him a permanent duty status that restricted these activities.[41] Accordingly, Mr. Richardson is a qualified individual with a disability under the ADA.

---

[38] Lavespere dep. 20:24-21:16, 22:6-20.
[39] Lavespere dep. 20:24-21:16, 22:6-20.
[40] Richardson Decl. ¶ 4.
[41] Lavespere dep. 26:21-27-6, Exhibit "C."

In the alternative, Defendants perceived Mr. Richardson as having a disability that substantially limits one or more major life activity. *See* § 12102(2)(A). "To meet this standard, a plaintiff must show either that (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Hale v. King*, 642 F.3d 492, 502 (5th Cir. 2011) (citations omitted). Here, Mr. Richardson had a permanent duty status that precluded his participation in hobby craft based on his documented medical conditions.[42] Defendants clearly perceived Mr. Richardson as disabled and excluded him from hobby craft based solely on his duty status, not his ability to safely participate in hobby craft. Defendants denied Mr. Richardson access to the hobby shop because they mistakenly perceived Mr. Richardson's impairments as substantially limiting a major life activity.

### D.    Mr. Richardson Experienced Discrimination in Violation of § 35.130(b)(8).

For the reasons set forth below, Defendants' policy that excludes an inmate with a duty status from hobby craft facially violates the ADA. Mr. Richardson experienced discrimination as a result of Defendants' violation of § 35.130(b)(8). Defendants' change to Mr. Richardson's duty status after receipt of the complaint did not moot Mr. Richardson's claims.

1.    Defendants' Policy of "No Hobby Craft" for Any Inmate with a Duty Status Facially Violates the ADA.

As described above, public entities "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities" from programs or services. 28 C.F.R. § 35.130(b)(8); *see also* 28 C.F.R., Appendix B to Part 35 (the ADA prohibits "the establishment of exclusive or segregative criteria that would bar

---

[42] Exhibit "C."

individuals with disabilities from participation in services, benefits, or activities."). Even if the screening is not a one-hundred per-cent bar, but only "diminish[es] an individual's chances of such participation," it violates the law. *Hahn ex rel. Barta v. Linn County, Ia*, 130 F.Supp.2d 1036, 1055 (N.D. Iowa, 2001). Thus, when public entities have a blanket prohibition for a service that excludes disabled persons, federal law is "clearly" violated. *E.g., Stillwell v. Kansas City, Mo. Bd. of Police Com'rs*, 872 F. Supp. 682 (W.D. Mo., 1995) ("The issue is whether the Board's blanket prohibition on all one-handed license applicants constitutes 'discrimination.' Clearly it does."). Indeed, blanket prohibitions are contrary to the notion that covered entities must engage in a good faith interactive process with an individual with a disability about their needed accommodation(s). *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009).

Here, Defendants have a blanket policy that screens out persons with disabilities. Per LSP Directive 9.036, **any** inmate "under medical care and/or treatment, requiring a duty status" is prohibited from using Angola's hobby shop. Ex. B at 2. And thus, those inmates are shut out of an opportunity to earn income. *See* 22 LAC § 313(F)(7)(b) (describing process by which inmates can be paid for selling what they make in the hobby shop).

The hobby shop is so significant to prisoners that "loss of hobby craft" is listed in the Louisiana Administrative Code as a "high court" punishment. 22 LAC § 341 (K)(2)(c). Thus, as a result of the DOC's policy stated in Directive 9.036, any person with a disability who is given a duty status by a doctor is automatically subjected to an explicit *punishment*.

Nor do Defendants make modifications to their no-hobby craft policy even if an inmate requests an accommodation. If a doctor applies the no-hobby craft policy and gives an inmate with a disability a "no hobby craft" duty status, the LSP's ADA coordinator did not even *consider* changing it. Mr. Falgout, the LSP ADA Coordinator, testified in his deposition that he denied

14

Mr. Richardson's request for accommodation based solely on Mr. Richardson's duty status and did not review his medical records.[43] Only after Mr. Richardson filed his complaint did Mr. Falgout request that Dr. Lavespere review Mr. Richardson's medical records and duty status.[44] At that point, Dr. Lavespere determined that Mr. Richardson could safely participate in light hobby craft.[45] If he had been asked to review Mr. Richardson's duty status when his request for accommodation was filed, Dr. Lavespere would have changed Mr. Richardson's duty status and allow him to participate in light hobby craft activities.[46]

But the doctors are not making a reasoned medical decision to add "no hobby craft" – they are just following the rules laid out in Directive 9.036. And the ADA Coordinator's refusal to consider a duty status change is especially shocking considering that the Louisiana Administrative Code *explicitly* lists a "change in duty status" as a method for the ADA coordinator to make an accommodation. 22 LAC § 308(E)(2)(b).

Thus, the DOC's blanket application of the Directive 9.036 no-hobby craft policy entirely flunks the "individualized review required by the ADA" for persons with disabilities. *See Rodriguez v. Conagra Grocery Products Co*., 436 F.3d 468, 476 (5th Cir., 2006). In *Rodriguez*, the Fifth Circuit held that an "assessment not reached in an individualized manner is not an assessment that we can credit." *Id.* at 476 ("In its *Sutton, Toyota Motor Manufacturing*, and *Murphy v. UPS, Inc.* decisions, the Supreme Court repeatedly emphasized "the individualized approach of the ADA."). The Supreme Court has specifically emphasized that an "individualized assessment of the effect of an impairment is particularly necessary when the impairment is one

---

[43] Falgout dep. 13:2-11.
[44] Lavespere dep. 11:6-23.
[45] Lavespere dep. 10:3-5.
[46] Lavespere dep. 27:17-28:11.

whose symptoms vary widely from person to person." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 199 (2002).

Thus, a policy that makes general assessments without consideration of the particularized condition of a particular person with a disability "runs directly counter to the *individualized inquiry mandated by the ADA*." *Kapche v. City of San Antonio*, 304 F.3d 493, 497 (5th Cir., 2002) (emphasis in original). In *Kapche,* the Fifth Circuit found that a city's guidelines that classified persons without an individualized inquiry was "contrary to both the letter and the spirit of the ADA." *Id.* at 498, *citing Bragdon v. Abbott*, 524 U.S. 624 (1998). In *Shaikh v. Texas A&M Univ. Coll. of Med.*, the Fifth Circuit explained that it is discriminatory under the ADA to exclude someone because they might be a liability.[47]

Considering the black-letter "individualized inquiry" requirement of the ADA, it is not surprising that this Court has looked at Angola's Directive 9.036 "no hobby craft" rule in three cases and treated it with suspicion several times. In the first case, *Reeves v. LeBlanc*, this Court held that a *pro se* plaintiff with "flat feet" had stated an ADA claim when "no hobby craft" was added to his duty status of "sitting job, no prolonged walking, standing [or] sports." 13-0586, R. Doc. 5 (M.D. La., Oct. 23, 2014). The Court did not fully decide the issue on the merits due to a statute of limitations problem. Subsequently, in *Guy v. Leblanc*, this Court found that disability discrimination likely motivated the LSP's blanket exclusion of a hard of hearing inmate from hobby craft activities. 400 F. Supp. 3d at 545. Finally, in *Lewis v. Cain,* this Court cited directly to Directive 9.036 for the proposition that "[e]vidence was presented showing that disabled inmates with a duty status were prohibited from certain programs and activities." No. 15-CV-318 at 76. However, the Court found that the defendants presented evidence at trial that "LSP providers

---

[47] S*haikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 at n. 9 (5th Cir. 2018).

give thoughtful consideration to the inmate's medical conditions and/or impairments in determining the safety of participate in hobby craft" when one of the named plaintiffs challenged his exclusion from hobby craft through an ARP. *Id.* at 77.

Now, this Court can finish the analysis it began in *Reeves, Guy,* and *Lewis,* and finally declare that Directive 9.036's "no hobby craft" rule for disabled inmates with duty statuses facially violates the ADA because it "tend[s] to screen out . . . any class of individuals with disabilities." There is ample evidence here and in *Guy* that LSP staff are not actually completing a "thoughtful consideration" of an inmate's ability to participate in hobby craft when challenging their exclusion from hobby craft based solely on their duty status. Accordingly, LSP Directive 9.036 violates the ADA because LSP staff cannot be trusted to actually consider an inmate's medical conditions when the inmate challenges their automatic exclusion from hobby craft.

2. Defendants Excluded Mr. Richardson from Hobby Craft Without Assessing His Ability to Safely Participate, in Violation of the ADA.

Mr. Richardson experienced discrimination as a result of Defendants' failure to assess whether he could safely participate in hobby craft before denying his request for accommodation. After Mr. Richardson was excluded from hobby craft on November 19, 2019, he immediately submitted a request for accommodation.[48] Mr. Richardson stated in his request that he was excluded from hobby craft solely because of his duty status.[49] Mr. Richardson cited the ADA and requested "to be able to go back in the Hobby Shop on all shifts and a memo for me so that I will not have this problem again…"[50] Mr. Falgout, as ADA coordinator, was responsible for responding to Mr. Richardson's request for accommodation.[51] Instead of assessing

---

[48] Richardson Decl. ¶ 9.
[49] Exhibit "D."
[50] Exhibit "D."
[51] Falgout dep. 12:1-16.

Mr. Richardson's ability to safely participate in hobby craft, Mr. Falgout denied Mr. Richardson's request for accommodation based on his duty status.[52] In his denial, Mr. Falgout explained that "[h]obbycraft, by facility policy and procedure is a privilege and not an entitled right. Restriction secondary to medical determination is upheld."[53] Thus, Mr. Falgout did not consider Mr. Richardson's medical conditions prior to denying his request for accommodation in violation of the ADA and RA.

Mr. Richardson received the denial of his request for accommodation and filed a request for administrative review ("second step ARP").[54] Mr. Richardson's second step ARP was denied, referencing Mr. Richardson's duty status and explaining that "[t]here is nothing else that can be added to make this issue any clearer."[55] Accordingly, Defendants did not complete any medical evaluation or individualized assessment of Mr. Richardson prior to denying his request to participate in hobby craft on two separate occasions. Defendants' actions violated § 35.130(b)(8) because they unnecessarily excluded Mr. Richardson from hobby craft despite his ability to safely participate in light hobby craft activities. Additionally, Dr. Lavespere's testimony establishes that there was no legitimate safety concern that would preclude Mr. Richardson from participating in hobby craft.

Defendants' denial of Mr. Richardson's request for accommodation without consideration of his medical conditions is not the "thoughtful consideration" contemplated in *Lewis*, but rather, a discriminatory exclusion described in *Guy*. Even though participation in hobby craft "is a privilege, not a right," staff at LSP still had an obligation to assess his ability to safely participate

---

[52] Falgout dep. 13:19-14:2.
[53] Exhibit "E."
[54] Richardson Decl. ¶ 12.
[55] Exhibit "F."

in hobby craft before denying his request. There was no legitimate reason for excluding Mr. Richardson from hobby craft and Defendants' actions violated the ADA and RA.

3. <u>Defendants' Voluntary Change to Mr. Richardson's Duty Status After Receipt of the Complaint Does not Moot His Claim for Injunctive Relief.</u>

Finally, Defendants' change to Mr. Richardson's duty status on July 17, 2020 after receipt of the Complaint does not moot Mr. Richardson's claims under the ADA and RA. A defendants' voluntary corrective action is insufficient to moot a plaintiff's claims. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (explaining that a defendant asserting that its voluntary conduct renders a case moot bears a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again"). In *City of Mesquite v. Aladdin's Castle, Inc.*, a city revised an ordinance held by a federal district court to be unconstitutional while the litigation was still pending on appeal. 455 U.S. 283, 288-89 (1982). The Supreme Court stated:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*Id.*

In *Beverly R. ex rel. E.R. v. Mt. Carmel Acad. of New Orleans, Inc.*, the Eastern District rejected an argument by the defendant that the plaintiff's claims were moot because the defendant had presented no evidence that it had "abandoned the allegedly discriminatory practice and it might reasonably be expected to recur." Civ. No. 20-2924, slip op. at 12 (E.D. La.  Mar. 23, 2021) (Morgan, S.). Finally, "[a] public entity's assurance that it will not violate the ADA and RA in the future does not immunize it from liability for past violations." *Guy*, 400 F.Supp.3d at 545 (citing See 42 U.S.C. § 12132; 29 U.S.C. § 794(a)).

In the context of the ADA, courts have held that permanent fixes will moot a claim for injunctive relief. *See, e.g., LaFleur v. S & A Family, LLC*, No. SA CV 13-01297-MWF, 2014 WL 2212018, at *4 (C.D. Cal. May 13, 2014) (finding that a covered entity eradicated several alleged barriers by grinding the surface of the parking spaces into compliance). However, when the discrimination can be easily resumed, a more robust showing of mooting must be made. *See, e.g., Young v. D.C. Hous. Auth.*, 31 F.Supp.3d 90, 97 (D.D.C.2014) ("[G]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of their alleged ADA violations is 'nearly impossible.'") (*quoting Feldman v. Pro Football, Inc.*, 419 Fed.Appx. 381 (4th Cir.2011))). Last minute legal maneuvers must be viewed with a critical eye. *See City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 283–284 (2001) ("Last minute legal maneuvers designed to insulate a decision from review by the Court must be viewed with a critical eye.").

Here, Mr. Richardson's initial light hobby craft duty status is temporary and expired on July 17, 2021.[56] Mr. Richardson is at risk for exclusion from hobby craft despite Dr. Lavespere's determination that he can safely participate. Based on the arbitrary denial of Mr. Richardson's November 2019 request for accommodation, it is reasonable that Defendants' discriminatory exclusion of Mr. Richardson from hobby craft will recur. Defendants' change to Mr. Richardson's duty status after receipt of the complaint is precisely the type of "last minute legal maneuver" that should be reviewed with a critical eye that can be easily resumed if injunctive relief is not granted.

Finally, Defendants have demonstrated a pattern of behavior that reflects they are not operating in good faith as it pertains to their hobby craft policy for inmates with disabilities. The Louisiana Department of Public Safety & Corrections has been sued at least three other times

---

[56] Exhibit "C".

20

regarding whether their hobby craft policy violates the ADA.[57] Through this Court's decision in *Guy*, Defendants were put on notice that their hobby craft policy that precludes participation in hobby craft despite an inmate's ability to safely participate in certain hobby craft activities could violate the ADA. *Guy*, 400 F.Supp.3d at 545. Mr. Falgout and Dr. Lavespere were both deposed in the *Guy* litigation, so they were aware of problems surrounding LSP's hobby craft policy in terms of its implications for inmates with disabilities. Despite Mr. Falgout and Defendants' knowledge of the discriminatory potential of LSP's hobby craft policy, Mr. Falgout formulaically denied Mr. Richardson's request for accommodation to be allowed to participate in hobby craft without completing any medical assessment of his ability to safely participate. Accordingly, Mr. Richardson's claim for injunctive relief was not mooted by Defendants' post-lawsuit, temporary change to his duty status.

**E.      The Discrimination Against Mr. Richardson is "By Reason of His Disability."**

Finally, the discrimination against Mr. Richardson is "by reason of his disability." A plaintiff must establish a causal connection between his disability and the alleged discrimination to satisfy the ADA's "by reason of" requirement. *Sandison v. Michigan High Sch. Athletic Ass'n., Inc.*, 64 F.3d 1026, 1036 (6th Cir.1995); *Rhodes v. Ohio High Sch. Athletic Ass'n.*, 939 F.Supp. 584, 592 (N.D. Ohio 1996). If a plaintiff was excluded for a legitimate reason other than because of a disability, then that action does not violate the principles of the ADA. *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (explaining that purpose is to "eliminate discrimination against otherwise qualified individuals"). Under the RA, a plaintiff must establish that he was excluded "solely" by reason of his disability. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 504 (5th Cir. 2002). In contrast, the Fifth Circuit has held

---

[57] *Guy*, 400 F. Supp. 3d 536, *Lewis*, No. 15-CV-318, *Reeves,* No. 13-CV-586.

21

that the that "the ADA does not require 'sole causation.'" *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)

Here, Mr. Richardson was excluded from hobby craft solely because his duty status, not because there were any concerns about his ability to safely participate in hobby craft. When Mr. Richardson's specific medical conditions were considered by Dr. Lavespere after this action was filed, Dr. Lavespere determined that Mr. Richardson could safely participate in light hobby craft activities despite his duty status.[58] Dr. Lavespere testified in his deposition that Mr. Richardson's medical condition had not changed since his request for accommodation in November 2019.[59] If Mr. Lavespere had been asked to review Mr. Richardson's duty status in November 2019, he would have changed Mr. Richardson's duty status to permit light hobby craft activities.[60] However, Mr. Falgout, the ADA Coordinator, did not review Mr. Richardson's medical conditions and instead denied his request for accommodation based solely on his duty status.[61] Clearly, the only reason Mr. Richardson was excluded from hobby craft after his request for accommodation was because of his disability, not his actual ability to safely participate in hobby craft.

**F.    Plaintiff's Remedy for Defendants' Violation of §§ 35.130(b)(8).**

In terms of the specific remedy for Defendants' violation of § 35.130(b)(8), Plaintiff requests that the Court Order Defendants to confer with counsel for Plaintiff and for the parties to work to develop appropriate injunctive relief. See, e.g., *Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 385 F. Supp. 3d 491, 512 (E.D. La. 2019), aff'd in part, vacated in part sub nom. *Smith v. France*, No. 19-30575, 2021 WL 1044968 (5th Cir. Mar. 18, 2021) (in

---

[58] Lavespere dep. 10:3-5.
[59] Lavespere dep. 27:7-16.
[60] Lavespere dep. 27:17-28:11.
[61] Falgout dep. 13:19-14:2.

ADA case ordering "the parties meet and confer to attempt to agree on the appropriate injunctive relief."); see also, *Brenner v. Shreveport School of Progressive Education*, U.S.D.C. for the W.D. of La., Case No. 20-1203, Dkt. No. 23 (in ADA service animal case, noting that "Defendant has not waived any rights to appeal by participating in the Court-ordered process of crafting the aforementioned policies or by stipulating to policies regarding service animals.").

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion for partial summary judgment.

> **BIZER & DeREUS, LLC**
> *Attorneys for Plaintiff*
>
> /s/ Emily A. Westermeier
> ANDREW D. BIZER (LA # 30396)
> GARRET S. DeREUS (LA # 35105)
> EMILY A. WESTERMEIER (LA # 36294)
> 3319 St. Claude Ave.
> New Orleans, LA 70117
> T: 504-619-9999; F: 504-948-9996
> Email:  andrew@bizerlaw.com
>            gdereus@bizerlaw.com
>            ewest@bizerlaw.com
>
> William Most
> Law Office of William Most, L.L.C.
> Louisiana Bar No. 36914
> 201 St. Charles Ave., Ste. 114 #101
> New Orleans, LA 70170
> Tel: (650) 465-5023
> Email: williammost@gmail.com
>
> *Attorneys for Plaintiff*