UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CEDRIC RICHARDSON                                              CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                                          NO. 20-00450-BAJ-EWD

### RULING AND ORDER

Before the Court are the following Motions: (1) Defendants James LeBlanc and the State of Louisiana Department of Public Safety and Correction's ("DPSC") **Motion for Summary Judgment (Doc. 28)**; and (2) Plaintiff's **Motion For Partial Summary Judgment (Doc. 27).** The Motions are opposed. (Doc. 30; Doc. 31). The parties filed Reply Briefs. (Doc. 32; Doc. 33). For the reasons stated herein, Defendants' Motion (Doc. 28) is **DENIED.** Plaintiff's Motion (Doc. 27) is **GRANTED IN PART** and **DENIED IN PART.**

### I. BACKGROUND

This is a disability discrimination case. (Doc. 1). Plaintiff Cedric Richardson is an inmate at Louisiana State Penitentiary ("LSP"). (Doc. 33-1, ¶ 1). Plaintiff alleges that Defendants excluded him from the LSP hobby shop because of his disability in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. The hobby shop allows incarcerated persons to produce crafts to sell at the Angola Prison Rodeo and Arts and Crafts Festival. (Doc. 27-1, ¶ 4; Doc. 31-1, ¶ 4).

1

## A. *Medical History Related to Hobby Shop Restriction*

On April 29, 2013, Plaintiff made a "sick call," complaining of numbness to his left hand and arm. (Doc. 28-1, ¶ 8; Doc. 30-1, ¶ 8). On May 6, 2013, Dr. Toce treated Plaintiff. (*Id.*). Dr. Toce documented the following: (1) rodeo injuries; (2) complaints of chronic neck and shoulder pain; and (3) recurrent complaints after the rodeo. (*Id.*). Based on Plaintiff's complaints, Dr. Toce recommended a "Squad A, no rodeo, duty status," and sent Plaintiff to Dr. Collins for a "duty status review."[1] (*Id.*).

On May 6, 2013, after conducting the "duty status review," Dr. Collins added that Plaintiff's duty status would exclude "kitchen," "hobby crafts," "sports," and was "permanent." (Doc. 28-1, ¶¶ 6–8; Doc. 30-1, ¶¶ 6–8).

On May 20, 2014, Plaintiff requested a duty status change to allow hobby craft. (Doc. 28-1, ¶ 10; Doc. 30-1, ¶ 10). On June 10, 2014, "Carla," a nurse practitioner, treated Plaintiff and documented his complaints as "chronic intermittent varying pain of his neck, back, and shoulders and he wants a regular duty." (Doc. 28-1, ¶ 11; Doc. 30-1, ¶ 11).

In March 2015, Plaintiff complained of pain and tingling in his left hand. (Doc. 28-1, ¶ 13; Doc. 30-1, ¶ 13). The orthopedic clinic diagnosed Plaintiff with carpal tunnel syndrome. (Doc. 28-1, ¶ 14; Doc. 30-1, ¶ 14). Between March 2015 and December 2019, Plaintiff's primary complaint was left wrist pain and numbness associated with carpal tunnel syndrome. (Doc. 28-1, ¶ 15; Doc. 30-1, ¶ 15).

---

[1] "Squad A" is a work duty status that imposes the following restrictions: (1) 10-minute breaks every hour; (2) cannot lift over 30 pounds; and (3) cannot use a yo-yo grass cutter. (Doc. 28-1, ¶ 9; Doc. 30-1, ¶ 9). "Squad A" also indicates several acceptable job assignments, such as "goose picking," sweeping, and mopping. (Doc. 28-1, ¶ 9; Doc. 30-1, ¶ 9).

### B. *Exclusion from the Hobby Shop*

On November 20, 2019, Plaintiff was excluded from the hobby shop based on his permanent duty status, which provides: "regular duty restrictions, Squad A, no kitchen, no hobby craft, no sports, no rodeo, permanent." (Doc. 28-1, ¶¶ 3–5, 21; Doc. 30-1, ¶¶ 3–5, 21; Doc. 37, p. 8).

On November 20, 2019, Plaintiff submitted a Request for Accommodation on a form provided by DPSC. (Doc. 28-1, ¶ 19; Doc. 30-1, ¶ 19). The form asked Plaintiff to "briefly state the problem and the proposed solution." (Doc. 28-1, ¶ 20; Doc. 30-1, ¶ 20). Plaintiff stated that he was asked to leave the hobby shop on November 20, 2019, because his duty status "stated No Hobby Shop." (Doc. 28-1, ¶ 21; Doc. 30-1, ¶ 21). As a remedy, Plaintiff requested "to go back in the Hobby Shop on all shifts and [for] a Memo for me so that I will not have this problem again, and for someone to talk to Major Holden and Sgt. Walker about this problem." (Doc. 28-1, ¶ 23; Doc. 30-1, ¶ 23). Plaintiff referenced the ADA in his request, stating that the "ADA prohibits entities, including the [Department of Corrections], from denying a qualified individual with a disability the benefits of the service, programs, or activities of the public entity because of the individual[']s disability." (Doc. 37, p. 8–9).

Tracy Falgout, ADA Coordinator at LSP, responded to Plaintiff's Request for Accommodation. (*Id.* at p. 8). Falgout reviewed Plaintiff's duty status and other hobby shop records and determined that Plaintiff's duty status indicated that he could not participate in hobby craft. (*Id.*). Accordingly, Falgout denied Plaintiff's request,

3

stating: "Hobbycraft, by facility policy & procedure is a privilege & not an entitled right. *Restriction secondary to medical determination is upheld. . .*" (*Id.*; Doc. 28-1, ¶ 24; Doc. 30-1, ¶ 24) (emphasis added).

Plaintiff then filed an Administrative Remedy Procedure ("ARP") grievance. (Doc. 28-1, ¶ 25; Doc. 30-1, ¶ 25). In his ARP, Plaintiff stated "my body is good enough to work and have a job and work in the field, but I cannot work in the hobby shop when I am in the shop." (Doc. 28-1, ¶ 26; Doc. 30-1, ¶ 26).

On March 6, 2020, Plaintiff's ARP was denied. (Doc. 37, p. 10). The denial stated that Plaintiff was "being denied access to the Hobby Shop because of [his] duty status. [. . .] *Until [Plaintiff's] duty status changes and the doctor says that [Plaintiff] can have access to the Hobby Shop, [Plaintiff] will remain forbidden to enter the Hobby Shop.*" (Doc. 28-1, ¶ 28; Doc. 30-1, ¶ 28) (emphasis added).

Plaintiff appealed the denial of his ARP. (Doc. 37, p. 10). On June 10, 2020, Plaintiff received a response to his appeal, a second step ARP, which agreed with Falgout's denial of Plaintiff's request. (*Id.*).

On July 13, 2020, Plaintiff filed the instant lawsuit, alleging violations of the ADA and RA. (*Id.* at p. 9). Four days after Plaintiff filed this suit, Dr. Lavespere reviewed Plaintiff's medical records and determined that he could safely participate in light hobby shop activities. (*Id.*).

### C. *Reinstatement of Hobby Shop Privileges*

On July 17, 2020, Dr. Lavespere issued Plaintiff a new duty status which permitted him to participate in the hobby shop, set to expire after one year. (*Id.*).

4

Plaintiff is currently authorized to participate in the hobby shop and has been since September 30, 2020. (*Id.* at p. 10). Plaintiff was issued his own hobby shop box in September 2020. (*Id.*). Plaintiff's current duty status, which permits him to participate in "light" hobby shop activities, is set to expire in January 2023. (*Id.* at p. 11).

## II. PROCEDURAL HISTORY

Plaintiff filed suit on July 13, 2020. (Doc. 1). The parties then filed the instant Motions for Summary Judgment. (Doc. 27; Doc. 28).

Defendants seek dismissal of Plaintiff's claims entirely, arguing that Plaintiff was excluded from the hobby shop based on a medical "individualized assessment" of his condition and limitations, rather than discrimination. (Doc. 28, p. 1).

Plaintiff seeks partial summary judgment, requesting the Court to rule on the following: (1) Plaintiff's standing to seek injunctive relief; (2) Plaintiff's status as an individual with a disability; (3) whether Defendants' policy that excludes all inmates with a duty status from hobby craft violates the ADA; and (4) whether Defendants' exclusion of Plaintiff from hobby shop without completing any assessment of his ability to safely participate violates 28 C.F.R. § 35.130(b)(8). (Doc. 27-1, p. 6).

The Court will address each Motion in turn, beginning with Defendants' Motion.

## III. LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

5

a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of [Defendant's] Motion, and therefore, the Court could grant [Defendant's] Motion for Summary Judgment on this basis alone.").

## IV. DISCUSSION

The instant Motions implicate two federal laws: Title II of the ADA and § 504 of the RA. (Doc. 27; Doc. 28). Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines "public entities" to include local governments. *Id.* at § 12131(1)(A). The United States Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Similarly, the Rehabilitation Act prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794. The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA. *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133)). "Thus, '[j]urisprudence interpreting either section is applicable to both.'" *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle*, 302 F.3d at 574) (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). Accordingly, the Court analyzes Plaintiff's ADA and RA claims under

one rubric. *See Guy v. LeBlanc*, 400 F. Supp. 3d 536, 540–41 (M.D. La. 2019).

## A. *Defendants' Motion for Summary Judgment (Doc. 28)*

### i. Prima Facie Case of Discrimination

To establish a prima facie case under Title II or the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Cadena*, 946 F.3d at 723 (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).

#### a) *Plaintiff has a Qualifying Disability*

Whether a plaintiff is disabled under the ADA is not a demanding question. *See* 42 U.S.C. § 12102(4)(A) ("The definition of disability ... shall be construed in favor of broad coverage . . ."). A qualifying disability under the ADA is either (1) "a physical or mental impairment that substantially limits one of more of the major life activities of the individual"; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." *Id.* at § 12102(2).

The Act specifies that major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A). The ADA does not

explain what "substantially limits" these activities, but regulations stress that this phrase must be broadly construed, because the relevant consideration is "whether public entities have complied with their obligations . . . not the extent to which an individual's impairment substantially limits a major life activity." 28 C.F.R. § 35.108(d)(1). To that end, an impairment qualifies under the Act "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," but it "does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 28 CFR § 35.108(d)(v).

Here, Plaintiff asserts that he suffers from chronic neck, back, and shoulder pain, as well as carpal tunnel syndrome. (Doc. 27-1, ¶ 6). Plaintiff further alleges that his disability prevents him from engaging in major life activities like lifting, bending, and other daily activities. (Doc. 1, ¶ 9).

Defendants deny that Plaintiff has a disability, and further deny that Plaintiff has chronic neck, back, and shoulder pain. (Doc. 31-1, ¶ 6). Defendants contend that "at most," Plaintiff has a *"history of* complaints of pain in his neck, back and shoulder."[2] (*Id.*). On the one hand, Defendants attest that there is "no evidentiary basis for concluding that [Plaintiff's] ability to bend is limited or that any limitations Plaintiff has are substantial." (*Id.* at ¶ 8). On the other hand, Defendants ask the Court to find that Plaintiff's exclusion from the hobby shop was warranted because it

---

[2] Defendants admit that Plaintiff has carpal tunnel syndrome, but the undisputed facts show that Defendants restricted Plaintiff's access to the hobby shop prior to his carpal tunnel diagnosis. (Doc. 28-1, ¶¶ 13–15; Doc. 30-1, ¶¶ 13–15; Doc. 31-1, ¶ 6).

9

was based on an "individualized medical assessment" of Plaintiff's condition, which indicated that Plaintiff could not safely participate in the hobby shop. (Doc. 28-2, p. 5–8). Defendants' logic, or lack thereof, fails.[3]

The Court finds that Plaintiff has a qualifying disability. Congress has made clear that the definition of disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Indeed, the United States Court of Appeals for the Fifth Circuit has emphasized that "[w]hether a plaintiff is disabled under the ADA is not a demanding question." *See Epley v. Gonzalez*, 860 F. App'x 310, 312 (5th Cir. 2021) (citing 42 U.S.C. § 12102(4)(A)). Here, Plaintiff has a physical impairment and his medical records reflect the same. (Doc. 28-1, ¶ 8; Doc. 30-1, ¶ 8). Defendants admit that Plaintiff's ability to lift, a major life activity, is limited. (Doc. 31-1, ¶ 8); *see* 42 USC § 12102(2)(A) (listing "lifting" as a major life activity). Accordingly, Plaintiff has a qualifying disability under the ADA. The first prong of Plaintiff's prima facie case is satisfied.

### b) *Plaintiff Was Excluded from Participation in the Hobby Shop*

It is undisputed that Plaintiff was excluded from participation in the hobby shop—a benefit, service, program, or activity—for which LSP, a public entity, is responsible. (Doc. 28-1, ¶¶ 3–5, 21; Doc. 30-1, ¶¶ 3–5, 21; Doc. 37, p. 8). The second prong of Plaintiff's prima facie case is satisfied.

---

[3] Defendants argue that Plaintiff cannot safely participate in hobby shop activities because of his disability. Incredibly, Defendants simultaneously argue that Plaintiff is not sufficiently disabled to qualify for protection under the ADA. The Court warns Defendants that their factual and legal inconsistencies border on a lack of candor to the Court.

### c) *Plaintiff was Excluded from the Hobby Shop Because of his Disability*

Defendants admit that they excluded Plaintiff from the hobby shop based on his medical condition. (Doc. 28-2, p. 18). Thus, the third prong of Plaintiff's prima facie case is satisfied.

### ii. Intentional Discrimination

To recover compensatory damages, however, Plaintiff must prove that the discrimination was intentional. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). The Fifth Circuit has "hesitated to 'delineate the precise contours' of the standard for showing intentionality." *Cadena*, 946 F.3d at 723 (citing *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018)). But the cases that have touched on the issue require "something more than 'deliberate indifference,'" despite most other circuits defining the requirement as equivalent to deliberate indifference. *Cadena*, 946 F.3d at 723 (quoting *Delano-Pyle*, 302 F.3d at 575).

Defendants argue that Plaintiff's intentional discrimination claim should be dismissed because the doctors who issued his duty statuses made individualized determinations about his medical condition and whether he could safely participate in hobby shop activities. (Doc. 28-2, p. 18). Defendants assert that Plaintiff's "disagreement about his medical duty status does not amount to intentional discrimination." (*Id.*).

Plaintiff responds that there is a genuine issue of material fact regarding

11

whether Defendants intentionally discriminated against Plaintiff. (Doc. 30, p. 8). Plaintiff argues that Falgout, ADA Coordinator, had actual knowledge of Plaintiff's need for an accommodation but failed to act, pointing to the following evidence. (*Id.*). Plaintiff filed: (1) a Request for Accommodation seeking to return to the hobby shop; (2) an ARP seeking to return to the hobby shop; (3) an appeal of the denial of his ARP seeking to return to the hobby shop; and (4) the instant lawsuit seeking to return to the hobby shop.[4] (Doc. 28-1, ¶ 19–28; Doc. 30-1, ¶ 19–28; Doc. 37, p. 8–10). Defendants failed to review Plaintiff's medical records to determine if he could return to the hobby shop, however, until *after* this lawsuit was filed. (Doc. 28-1, ¶¶ 19–28; Doc. 30-1, ¶¶ 19–28; Doc. 37, p. 8–10).

Defendants offer no reason why they failed to review Plaintiff's medical records and allow Plaintiff to return to the hobby shop until after the initiation of this lawsuit except to say that their decision was based on a "medical determination." (Doc. 37, p. 8; Doc. 28-1, ¶¶ 24, 28; Doc. 30-1, ¶¶ 24, 28). Within *four days* of the initiation of this lawsuit, however, Dr. Lavespere reviewed Plaintiff's medical records and issued Plaintiff a new duty status that permitted him to participate in the hobby shop. (Doc. 37, p. 9).

As noted, although the Fifth Circuit has hesitated to 'delineate the precise contours' of the standard for showing intentionality[,]" the Circuit has emphasized that "[i]ntent is usually shown only by inferences." *Cadena v. El Paso Cnty.*, 946 F.3d

---

[4] The Circuit has emphasized that "intent requires that the defendant at least have actual notice of a violation." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 575 (5th Cir. 2018). Based on the foregoing evidence, it is clear and undisputed that Defendants had actual notice of the alleged violation here.

12

717, 723 (5th Cir. 2020); *see also Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 184–85 (5th Cir. 2015) (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) ("We conclude that on the present record, there is enough to show a dispute of material fact on whether [defendant] intentionally, i.e. purposefully, discriminated. Intent is usually shown only by inferences. [] Inferences are for a fact-finder and we are not that. [] Still, we conclude that actual intent *could* be inferred from the evidence before us."). On summary judgment, the Court must draw all reasonable inferences in Plaintiff's favor and view all facts in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, based on the record evidence, the Court finds that a reasonable jury could find that Defendants intentionally discriminated against Plaintiff. Defendants' Motion for Summary Judgment (Doc. 28) is **DENIED** in this respect.[5]

---

[5] The Court notes that its holding is not contrary to that of *Lewis v. Cain*, No. 3:15-CV-318, 2021 WL 1219988, at *57 (M.D. La. Mar. 31, 2021), *reconsideration denied*, No. CV 15-318-SDD-RLB, 2021 WL 5287856 (M.D. La. Oct. 8, 2021). There, the Court emphasized that under the ADA, it was "only evaluating whether the entire sub class of disabled inmates were systemically denied access to hobby shop because of their disabilities," and found that "[t]his was not proven." *Id.* The Court determined that plaintiffs failed to carry their burden of proof because "the records demonstrate that the medical staff evaluated [relevant] medical conditions when considering [the] request." *Id.* at *57.

The instant case is distinguishable. Here, the Court analyzes the claims of *this* Plaintiff, rather than those of an entire sub class of disabled inmates. Additionally, Plaintiff has provided evidence indicating that Dr. Lavespere failed to review Plaintiff's medical records, despite Plaintiff's multiple requests, until after the initiation of this lawsuit. (Doc. 37, p. 9). Accordingly, the record evidence shows that medical staff did not evaluate Plaintiff's medical conditions when considering his requests.

### B. *Plaintiff's Motion for Partial Summary Judgment (Doc. 27)*

#### i. Plaintiff has a Qualifying Disability

In his Motion for Partial Summary Judgment, Plaintiff first asks the Court to find that Plaintiff has a qualifying disability under the ADA. (Doc. 27-1, p. 6). For the reasons stated in Section IV(A)(i)(a) above, the Court finds that Plaintiff has a qualifying disability. Plaintiff's Motion for Partial Summary Judgment (Doc. 27) is **GRANTED** in this respect.

#### ii. Whether LSP Directive 9.036 Violates the ADA

Second, Plaintiff asks the Court to find that LSP Directive 9.036 fails to comply with the ADA. As Defendants point out, Plaintiff did not assert a facial challenge to LSP Directive 9.036 in his Complaint, but rather argued that Directive 9.036 led to Defendants' discrimination against Plaintiff. (*See* Doc. 1, Section V, "Claims for Relief"). Accordingly, it would be inappropriate for the Court to rule on a facial challenge to Directive 9.036 here. (Doc. 27, p. 17). Plaintiff's Motion for Partial Summary Judgment (Doc. 27) is **DENIED** in this respect.

#### iii. Whether Defendants Violated 28 C.F.R. § 35.130(b)(8)

Third, Plaintiff asks the Court to find that that Defendants violated 28 C.F.R. § 35.130(b)(8), a regulation implementing the ADA, by prohibiting him from participating in hobby shop activities because of his disability. (Doc. 27-1, p. 6). Section 35.130(b)(8) prohibits public entities from imposing or applying:

> eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service,

14

program, or activity being offered.

As discussed in section A above, the Court will permit Plaintiff's ADA and RA claims proceed to trial. The Court will not make a specific finding regarding whether Defendants violated a regulation implementing the ADA here because the issue of whether Defendants violated the ADA itself will be submitted to a jury. Plaintiff's Motion for Summary Judgment (Doc. 27) is **DENIED** in this respect.

### iv. Injunctive Relief

Finally, Plaintiff seeks injunctive relief to ensure that Defendants do not arbitrarily revoke Plaintiff's temporary duty status and exclude Plaintiff from participating in hobby shop activities in the future. (Doc. 27-1, p. 7). Since the filing of Plaintiff's Motion, the parties have agreed to the following:

> Plaintiff is no longer seeking injunctive relief that he be permitted to resume hobby [] shop, since this relief has been voluntarily provided by Defendant. However, he is still seeking injunctive relief to ensure that his hobby [] shop privileges are not arbitrarily changed, though he does not dispute that Defendants can modify those privileges based on legitimate medical necessity or security concerns.

(Doc. 37, p. 4).

To the extent Plaintiff requests injunctive relief to ensure that his hobby shop privileges are not changed in the future, the Court lacks standing to grant this request. Requests for injunctive relief implicate the intersection of the redressability and injury-in-fact requirements. *Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019). The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. *Id.* Plaintiffs seeking injunctive relief can satisfy the redressability requirement only by

15

demonstrating a continuing injury or threatened future injury. *Id.* That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact. *Id.*

To be an injury in fact, a threatened future injury must be: (1) potentially suffered by the plaintiff, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* The purpose of the requirement that the injury be "imminent" is "to ensure that the alleged injury is not too speculative for Article III purposes." For a threatened future injury to satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur. *Id.*

On the record before the Court, Plaintiff has failed to show that the alleged threatened future injury is "actual or imminent, not 'conjectural' or 'hypothetical.'" Indeed, the undisputed facts show that Plaintiff is currently authorized to participate in hobby shop activities and has been since September 30, 2020. (Doc. 37, p. 10). Plaintiff was issued his own hobby shop box in September 2020. (*Id.*). Plaintiff's current duty status, which permits him to participate in "light" hobby shop activities, is set to expire in January 2023. (*Id.* at p. 11). Before January 2023, the Court will proceed to trial on the merits in this matter and the issue of whether Defendants violated the ADA and RA will be addressed. Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 27) is **DENIED** in this respect.

16

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants James LeBlanc and the State of Louisiana Department of Public Safety and Correction's **Motion for Summary Judgment (Doc. 28)** is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff's **Motion For Partial Summary Judgment (Doc. 27)** is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Baton Rouge, Louisiana, this 13th day of July, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA